IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF MARYLAND

(Greenbelt Division)

|  |  |
|---|---|
| In re: | ) Chapter 11 |
| KH FUNDING CO., | ) Case No. 10-37371 (TJC) |
| Debtor. | ) |

**POST-CONFIRMATION DEBTOR'S CHAPTER 11 FINAL REPORT AND MOTION FOR ORDER (A) ENTERING FINAL DECREE, (B) APPROVING DISTRIBUTIONS TO UNSECURED CREDITORS, (C) AUTHORIZING THE ABANDONMENT OF CERTAIN PROPERTY, (D) AUTHORIZING THE ABANDONMENT AND DESTRUCTION OF CERTAIN DOCUMENTS AND RECORDS, AND (E) GRANTING RELATED RELIEF**

KH Funding Co., the post-confirmation, liquidating debtor in the above-captioned case (the "Debtor"), at the direction of its Plan Administrator (as defined below) and through its undersigned counsel, hereby (1) submits it Chapter 11 Final Report and (2) moves this Court (the "Motion") pursuant to sections 105, 350(a), 554, and 1101(2) of Title 11 of the United States Code (the "Bankruptcy Code"), Rules 3022 and 6007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 3022-1 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the District of Maryland (the "Local Rules") for entry of an order (a) entering a final decree, (b) approving final distributions to unsecured creditors, (c) authorizing the abandonment of certain property, (d) authorizing the abandonment and destruction of certain documents and records, and (e) granting related relief. In support of this Motion, the Debtor respectfully states as follows:

**Jurisdiction**

1. This Court has jurisdiction over this Motion under 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (B) and (O).

2. The statutory predicates for the relief requested herein are sections 105(a), 350(a), 554, and 1101(2) of the Bankruptcy Code and Rules 3022 and 6007 of the Bankruptcy Rules.

**General Background**

3. On December 3, 2010 (the "Petition Date"), the Debtor commenced this case (the "Chapter 11 Case") by filing a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

4. Through the Effective Date, as defined below, the Debtor continued in the possession of its property and continued to operate and manage its business as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5. No trustee or examiner has been appointed in the Chapter 11 Case.

6. On January 20, 2011, the Office of the United States Trustee for Region 4 appointed the Official Committee of Unsecured Creditors (the "Committee").

7. On April 17, 2012, the Court entered the *Order Confirming Third Amended Joint Plan of Liquidation of KH Funding Company and the Official Committee of Unsecured Creditors* (the "Confirmation Order") [Docket No. 482], confirming the *Third Amended Joint Plan of Liquidation of KH Funding Company and the Official Committee of Unsecured Creditors* (as amended and/or modified, the "Plan") as jointly proposed by the Debtor and the Committee and overwhelmingly supported by the Debtor's creditors.

8. On May 1, 2012, the Plan became effective in accordance with its terms (the "Effective Date"). BDO Consulting ("BDO") was appointed as the initial administrator of the Plan (the "Plan Administrator"); effective July 2, 2012, Alfred T. Giuliano of Giuliano, Miller & Company, LLC, succeeded BDO as Plan Administrator. On the Effective Date, the Committee was dissolved and an Oversight Committee was appointed with authority to review and approve certain settlements and other matters.

9. The Debtor has now completed its liquidation of assets and objections to claims, has completed its distributions to secured, administrative, and priority claimants under the Plan, and is prepared to effectuate its final distribution to unsecured creditors, to complete certain remaining administrative matters, and to close the Chapter 11 Case.

10. The following is the report of payments made or to be made pursuant to the Plan. Receipts and disbursements listed below are as of June 30, 2022; in addition to the distributions to unsecured creditors that will follow the grant of the relief requested in this Motion, some additional administrative expenses will be incurred and paid.

**TOTAL DISTRIBUTIONS TO DATE**     **$111,499.08**

PERCENTAGE OF CLAIMS TO BE PAID TO THE GENERAL CLASS OF UNSECURED CREDITORS WITHIN THE PLAN     4.99%

| | | | | |
|---|---|---|---|---|
| A. | **Post-Confirmation Gross Cash Receipts**: | | $7,876,451.68 | |
| | | Paid | Proposed to be Paid Going Forward | Total |
| B. | **Priority Payments of Expenses of Administration Other Than Operating Expenses**: | | | |
| | 1. Plan Administrator's Compensation and Expenses | $233,984.65 | $0.00 | $233,984.65 |
| | 2. Fee and Expenses, Plan Administrator's Counsel | $2,617,070.07 | $60,000.00 | $2,677,070.07 |

|   |   |   |   |   |
|---|---|---|---|---|
|   | 3. Plan Administrator's Other Professionals | $1,677,302.64 | $27,500.00 | $1,704,802.64 |
| C. | **Other Professional Fees and Expenses**: |   |   |   |
|   | 1. Fee and expenses, Debtor's Financial Advisor | $11,750.00 | $0.00 | $11,750.00 |
|   | 2. Fee and expenses, Auctioneers and Appraisers | $0.00 | $0.00 | $0.00 |
|   | 3. Fee and expenses, Attorneys for Debtor | $816,081.77 | $0.00 | $816,081.77 |
|   | 4. Other professional fees – Attorneys for the Committee | $356,625.35 | $0.00 | $356,625.35 |
|   | 6. Other professional fees – Financial Advisor for the Committee | $415,721.94 | $0.00 | $415,721.94 |
|   | 7. Taxes, fines, penalties, etc. | $0.00 | $0.00 | $0.00 |
|   | 8. UST Fees | $80,877.09 | $17,000.00 | $97,877.09 |
|   | 9. Other expenses of administration | $649,635.53 | $2,500.00 | $652,135.53 |
| D. | **Payments to Creditors**: (totals under each Category sufficient) |   |   |   |
|   | Administrative Claims (not otherwise identified above) | $0.00 | $0.00 | $0.00 |
|   | Priority Tax Claims | $56,676.08 | $0.00 | $56,676.08 |
|   | Class 1—Priority Claims | $0.00 | $0.00 | $0.00 |
|   | Class 2—Secured Claim (Tiray Spriggs Special Needs Trust) | $0.00 | $0.00 | $0.00 |
|   | Class 3—Secured Claim (Market Street Mortgage, LLC) | $0.00 | $0.00 | $0.00 |
|   | Class 4—Intentionally Omitted | $0.00 | $0.00 | $0.00 |
|   | Class 5—Intentionally Omitted | $0.00 | $0.00 | $0.00 |
|   | Class 6—Intentionally Omitted | $0.00 | $0.00 | $0.00 |
|   | Class 7—Series 3 Note Claims[1] | $54,823.00 | $1,933,724.74 | $1,988,547.74 |
|   | Class 8—Series 4 Note Claims[2] | $0.00 | $0.00 | $0.00 |
|   | Class 9—Unsecured Claims[3] | $0.00 | $19,588.18 | $19,588.18 |
|   | Class 10—Equity Interests | $0.00 | $0.00 | $0.00 |
| E. | **Other Payments**: (including surplus Payments to debtor) | $0.00 | $0.00 | $0.00 |

---

[1] Except for the $54,823.00 secured component, reflects estimated distribution; distribution will follow entry of an order granting this Motion. Pursuant to the Plan, distributions on account of the Series 3 Note Claims will be made to the Series 3 Trustee, which is entitled to deduct its expenses before effectuating any distribution to beneficial holders. Actual distribution to the beneficial holders is unknown.

[2] Pursuant to the terms of the Plan, any distributions upon Series 4 Note Claims are subordinated to the Series 3 Note Claims. Absent 100% recovery by the Series 3 Note Claims, which will not occur, any distribution upon the Series 4 Note Claims is at the discretion of the Series 3 Trustee and unknown to the Debtor.

[3] Estimated distribution; distribution will follow entry of an order granting this Motion.

| F. | **TOTAL DISBURSEMENTS**[4] | $9,030,861.04 |
|---|---|---|

### Requests for Relief

11. By this Motion, the Debtor, seeks (a) entry of a final decree pursuant to Sections 105, 350(a), and 1101(2) of the Bankruptcy Code, Rule 3022 of the Bankruptcy Rules, and Local Bankruptcy Rule 3022-1, closing its bankruptcy case; (b) entry of an order approving distribution to unsecured creditors; (c) entry of an order approving abandonment of certain property; (d) entry of an order approving abandonment and destruction of certain documents and records; and (e) related relief.

A. <u>Case Closing and Final Decree</u>

12. Section 350(a) of the Bankruptcy Code provides that after a debtor's estate is fully administered and the court has discharged the trustee, the court shall close the case. 11 U.S.C. § 350. Bankruptcy Rule 3022 sets forth the procedure for the closing of a chapter 11 case and the entry of a final decree, providing that "after an estate is fully administered in a chapter 11 reorganization case, the court, on its own motion or on motion of a party in interest, shall enter a final decree closing the case." FED R. BANKR. P. 3022.

13. The standard for determining whether a debtor's estate has been fully administered and a final decree should issue is whether a debtor's plan has been substantially consummated as defined in Section 1101(2) of the Bankruptcy Code. *See In re A. H. Robbins Co., Inc.*, 219 B.R. 145, 150 (E.D. Va. 1998) (citing *In re Jordan Mfg. Co. Inc.*, 138 B.R. 30, 344 (Bankr. C.D. Ill. 1992)); *see also In re McDonnell Horticulture, Inc.*, No. 12-09009, 2015 WL

---

[4] Post-Confirmation receipts and disbursements are as of April 30, 2022, and are based upon a final reconciliation of the Plan Administrator's accounts. The final Post-Confirmation Quarterly Report for the 2nd quarter of 2022 will reflect these amounts along with any subsequent disbursements. Pre-confirmation disbursement data is derived from information received from the Plan Administrator by the Debtor's professionals.

1344254, at *2 (Bankr. E.D.N.C. Mar. 20, 2015).  Section 1101(2) defines "substantial consummation" as follows:

> (A) transfer of all or substantially all of the property proposed by the plan to be transferred;
> (B) assumption by the debtor or by the successor to the debtor under the plan of the business or the management of all or substantially all of the property dealt with by the plan; and
> (C) commencement of distribution under the plan.

11 U.S.C. § 1101(2).

14. Furthermore, Local Bankruptcy Rule 3022-1(a), which incorporates the Advisory Committee Note to Bankruptcy Rule 3022, provides that a Chapter 11 plan will be deemed fully administered under Bankruptcy Rule 3022, after the following:

> (a) six (6) months have elapsed after the entry of a final order of confirmation that has become nonappealable;
>
> (b) the deposits required by the plan have been distributed;
>
> (c) the property proposed by the plan to be transferred has been transferred;
>
> (d) the debtor or the successor of the debtor under the plan has assumed the business or the management of the property dealt with by the plan;
>
> (e) payments under the plan have commenced; and
>
> (f) all motions, contested matters, and adversary proceedings have been finally resolved . . . .

Local Bankruptcy Rule 3022-1(a). The factors set forth in the Committee Note to Rule 3022 merely serve as a guide in assisting the court in determining whether a case is finally administered; all six factors do not need to be present before the court enters a final decree closing the case. *See In re Mold Makers, Inc.*, 124 B.R. 766, 768 (Bankr. N.D. Ill. 1990); *see also In re Omega Optical, Inc.*, 476 B.R. 157, 167 (Bankr. E.D. Pa. 2012) (same). In addition, Local Bankruptcy Rule 3022-1(b) requires the filing of a certification of full administration.

15. The Debtor hereby avers that all provisions of the Plan have been substantially consummated and, thus, the Debtor's estate has been fully administered. A certification of full administration is attached hereto as **Exhibit A**.

16. Since the Effective Date, the Debtor has been concerned with multiple matters including but not limited to the following:

a. the disposition of certain assets: since the Effective Date, the Debtor has sold four properties, generating net proceeds of $962,525.00, has realized upon forty loans that have been paid in full and/or compromised, generating net proceeds of $2,527,524.00, and has recovered $25,522.86 in connection with a disputed priority lien claim in the bankruptcy case of the Jin Suk Kim Trust. The Debtor also completed negotiations and documentation of a settlement with respect to the most significant of its remaining loans, recovering in excess of $450,000. In preparation for the sale described in subparagraph (f), below, the Debtor completed eleven loan modifications or restructurings totaling $1,653,921.00. In addition, the Debtor filed a motion and obtained authority to abandon four properties that it determined were without value;

b. the analysis and pursuit of litigation: December 3, 2012, was the two-year anniversary of the Petition Date and the deadline to commence certain suits. The Debtor filed 7 avoidance actions and 3 fraudulent conveyance actions, all of which have been resolved by settlement or judgment, including recovery of $315,000.00 in connection with certain of the larger actions, judgment in the amount of $134,717.15 against Aida Escobar, and a fixed and stipulated claim as part of the settlement with Robert Harris described below. In addition, on or about September 26, 2013, the Debtor commenced suit seeking recovery in connection with a

large promissory note, which matter settled for $110,000 and which amount now has been collected in full;

   c. the management of the Debtor's claims in the Chapter 7 bankruptcy of the Debtor's former CEO, Robert Harris (Bankr. D. Md. Case No. 13-12828), including filing of a complaint objecting to Mr. Harris' discharge.  This dispute was settled, and a motion to approve a stipulated judgment against Mr. Harris in the non-dischargeable amount of $1,088,365.33 (which amount includes the recovery sought against Mr. Harris in connection with the avoidance action noted above in subparagraph (b)) was granted;

   d. the Chapter 11 bankruptcy case of Trigee Foundation Inc. ("Trigee") (Bankr. D. D.C. Case No. 12-624).  The Debtor held undersecured second and third priority interests in excess of $2.5 million, a significant asset of the estate, undertook to prepare a competing plan of liquidation and pursued that plan almost to confirmation before Trigee obtained alternate financing and reached a settlement with the Debtor that allowed prompt receipt by the Debtor of $1,275,000.00;

   e. discovery issues in various other, third-party, matters where the Debtor has received formal or informal discovery requests, including but not limited to requests served upon the Debtor in connection with suit by certain holders of the Debtor's Series 3 Notes against the indenture trustee with respect to those Series 3 Notes;

   f. marketing and closing the sale of 14 loans to a single buyer, finalized in late August 2014, generating net proceeds of $1,558,804;

   g. retiring the last remaining secured claim provided for under the Plan;

   h. preparing for sale, marketing, and closing with respect to 30 remaining loans and judgments, including 19 consumer loans and 11 commercial loans, which included

some first priority but mostly less-desirable second priority and unsecured loans. The Debtor solicited buyers, executed confidentiality agreements, and circulated bid procedures and a proposed asset purchase agreement. Bids were due February 15, 2018, the Debtor obtained buyers for three loans, and proceeds of $97,722.00 were generated;

        i.      reviewing secured, administrative, and priority claims for those warranting objection, which resulted in an omnibus objection to certain secured claims filed on April 27, 2018. That objection was granted by an order entered on June 26, 2018, and the Debtor believes its review of, and objections to, administrative, priority, and secured claims is now complete; and

        j.      reviewing unsecured claims for those warranting objection, which resulted in a second omnibus objection to claims filed on April 23, 2021. That objection was granted by an order entered on September 30, 2021, and the Debtor believes its review of, and objections to, unsecured claims is now complete.

17.    At this time, the Debtor's estate is fully administered and should be closed. The Court confirmed the Plan more than ten years ago, the time for appeal of confirmation has long since passed, and the Plan has been substantially consummated. All requisite transfers were completed on or about the Effective Date, and all distributions under the Plan, apart from distributions to unsecured creditors and the Series 3 Trustee that will follow entry of an order in connection with this Motion, have been completed. Furthermore, all motions, contested matters, and adversary proceedings in the Chapter 11 Case have been finally resolved. Accordingly, the Court should enter a final decree closing the Chapter 11 Case.

18.    Moreover, as noted above, Section 350(a) of the Bankruptcy Code provides that after a debtor's estate is fully administered and the court has discharged the trustee, the court shall close the case. Because no trustee was appointed in this case, the Court should

enter a final decree closing the Debtor's case if it finds that the Debtor's estate has been fully administered. The standard for determining full administration under Section 350(a) of the Bankruptcy Code is whether a debtor's plan is substantially consummated, as defined in Section 1101(2) thereof. *See In re A. H. Robbins Co.*, 219 B.R. at 150.

19. At this time, the Plan has been substantially consummated. All three elements of the statutory definition of "substantial consummation" are present in the Debtor's case.

  a. Section 1101(2)(A) has been satisfied because all transfers contemplated by the Plan were effectuated upon the Effective Date.

  b. Section 1101(2)(B) is satisfied because all of the property that was in the Debtor's Chapter 11 Case and subject to the Plan was assumed by the post-confirmation Debtor. This transfer was completed by operation of law and the Plan on the Effective Date.

  c. Section 1101(2)(C) is also satisfied. Distributions have not merely commenced; they have been substantially completed except with respect to unsecured creditors and the Series 3 Trustee, which will follow entry of an order approving this Motion. Any other remaining activity will be limited to payment of remaining amounts to professionals, completion of final tax returns, and other administrative matters related to the dissolution of the Debtor. Thus, the Bankruptcy Code's definition of substantial consummation has been met with respect to the Plan and as a result, the Debtor's case should be closed.

20. Furthermore, a review of the six (6) factors set forth in Local Bankruptcy Rule 3022-1(a) provides additional support for finding that the Debtor's estate has been fully

administered and that a final decree should be entered. All six (6) of these factors have been satisfied with respect to the Debtor's case.

    a.    The first factor is satisfied because, as noted above, the Confirmation Order was entered on April 17, 2012, and the time to appeal has long since passed.

    b.    The second factor is satisfied because the Plan does not provide for distribution of any deposits.

    c.    The third factor is satisfied because the property to be transferred under the Plan was transferred on the Effective Date.

    d.    The fourth factor is satisfied because the post-confirmation Debtor assumed the property to be distributed under the Plan upon the Effective Date.

    e.    The fifth factor is satisfied because payments under the Plan have not simply "commenced" but have been substantially completed, except as described herein.

    f.    The sixth factor is satisfied because all motions, contested matters, and adversary proceedings have been finally resolved with respect to the Debtor's case.

21.    Thus, the Debtor's bankruptcy estate has been fully administered under Bankruptcy Rule 3022, and the Court should enter a final decree closing the case. *See In re Mold Makers*, 124 B.R. at 768.

22.    In accordance with the terms of the Plan, the Plan Administrator was granted exculpation for, *inter alia,* " the administration of the Plan or the property to be distributed under the Plan, except for acts or omissions that constitute willful misconduct, gross negligence or fraud." Plan Article 10.7. In addition, the Plan provides that:

> In the absence of any pending action to remove a Plan Administrator for good cause, any resigning Plan Administrator, without further action, order, or decree, shall be deemed released by the Post-Confirmation Debtor from any and all Claims, obligations, suits, judgments, damages, rights, causes of action and liabilities whatsoever (including those

arising under the Bankruptcy Code), whether known or unknown, foreseen or unforeseen, existing or hereinafter arising in law, equity, or otherwise, based in whole or in part on any act, omission, transaction, event or other occurrence in connection with the Chapter 11 Case; provided, however, that the foregoing shall not operate as a waiver of or release from any causes of action arising out of the willful misconduct or the gross negligence of the Plan Administrator unless the Plan Administrator acted in good faith and in a manner that the Plan Administrator reasonably believed to be in or not opposed to the best interests of the Debtor, and with respect to any criminal action or proceeding, had no reasonable cause to believe the Plan Administrator's conduct was unlawful.

Plan Article 5.4.  Insofar as no action to remove the Plan Administrator is pending, the Debtor requests that the Court ratify the release and exculpation of the Plan Administrator contained in the Plan.

    B.    <u>Approval of Distributions</u>

    23.    While the Plan provides authority for the Debtor to effectuate distributions to the Series 3 Trustee on account of Class 7 Series 3 Note Claims and to holders of allowed Class 9 General Unsecured Claims, *see* Plan Article 4.8, 4.10, 6.1, 6.3, and 6.4, the Debtor brings this motion in an abundance of caution and, in particular, to remind the beneficial holders of Series 3 Notes that, pursuant to the Plan, distribution on account of Series 3 Note Claims will be made to the Series 3 Trustee, which is entitled to deduct its fees and expenses before making distribution to the beneficial holders of Series 3 Notes.

    24.    There is approximately $1,953,312.92 available for distribution to unsecured creditors, which, pursuant to the Plan, will be shared *pari passu* between Class 7 Series 3 Note Claims and Class 9 General Unsecured Claims.  Both Classes will receive approximately 4.99% on account of their unsecured claims.

    25.    The Debtor has reviewed and, as appropriate, objected to Class 9 General Unsecured Claims.  Remaining Allowed Class 9 General Unsecured Claims involve 14 claims

totaling $392,333.10. The Debtor intends to make distributions to holders of allowed Class 9 Claims in accordance with Article 6.4 of the Plan to the creditor's last known address.

26. The Plan describes the mechanism for distributions on account of Series 3 Note Claims as follows:

> The balance of the Series 3 Note Claims [after accounting for the secured component], to the extent they are Allowed Claims, shall be Allowed General Unsecured Claims and shall receive *pari passu* with Allowed Class 8 Claims (subject to the subordination provisions set forth in the Indenture and implemented by the Plan as noted and subject to the qualifications set forth herein) and Allowed Class 9 Claims a Pro Rata distribution of the liquidated assets of the estate after the payment or reserve for Administrative Claims, Priority Tax Claims, Priority Claims, Secured Claims, and Plan Expenses. All distributions on account of Series 4 Note Claims shall be remitted to the Series 3 Trustee until the Series 3 Note Claims have been paid in full and, thereafter, any such distributions in respect of Series 4 Note Claims shall be remitted to the Series 4 Trustee for distribution to the holders of Series 4 Note Claims as herein provided. . . .
>
> Consistent with Bankruptcy Rule 3003(c), the Debtor, Post-Confirmation Debtor, Plan Administrator and Committee, as applicable, shall recognize proofs of claim timely filed by the Series 3 Trustee in respect of the Series 3 Notes and Series 3 Note Claims. Accordingly, any claim arising under the Series 3 Notes or Indenture, proof of which is filed by the registered or beneficial holder of Series 3 Notes, shall be disallowed as duplicative of the Claim of Series 3 Trustee, without any further action of the Bankruptcy Court.
>
> In accordance with Article VI hereof, all distributions relating to or on account of the Series 3 Note Claims and Series 4 Note Claims (until the Series 3 Note Claims have been paid in full) shall be made to the Series 3 Trustee subject to the express terms of the Plan, including, without limitation, the satisfaction of all fees and expenses secured by the Series 3 Trustee Charging Lien and Series 4 Trustee Charging Lien. After satisfaction of such fees and expenses secured by the Series 3 Trustee Charging Lien and the Series 4 Trustee Charging Lien, any funds received by the Series 3 Trustee and/or the Series 4 Trustee shall be distributed in accordance with this Plan. In the event the Series 3 Note Claims are paid in full, any subsequent distributions in respect of Series 4 Note Claims shall be remitted to the Series 4 Trustee for distribution to the holders of Series 4 Note Claims in accordance with and subject to the express terms of the Plan.

Plan 4.8.

27. In sum, the proof of claim filed by the Series 3 Trustee is the applicable claim on behalf of all Series 3 Note Claims, the Debtor is to make any distribution to the Series 3 Trustee on account of Series 3 Note Claims, and the Series 3 Trustee is entitled to deduct "all

fees and expenses" secured by the charging lien set forth in its Indenture as defined in the Plan before making distribution, if any, to the beneficial holders of Series 3 Note Claims.

28.     The Series 3 Trustee filed that claim assigned claim number 101-1 asserting a total unsecured claim of $38,785,540.76 ("Claim 101").  $54,823.00 of Claim 101 was satisfied by payment of the Series 3 Note Secured Claim, leaving an allowed unsecured claim of $38,730,717.76.  The Debtor has reviewed Claim 101 and has determined that it is an Allowed claim under the Plan.  Consequently, the Debtor will make distribution in accordance with the Plan to the Series 3 Trustee and is unable to predict what, if any, recovery will be had by the beneficial holders of the Series 3 Notes.

29.     The Debtor submits that the foregoing is in accordance with the terms of the Plan and seeks entry of an order ratifying the foregoing as consistent with the Plan.  Notice of the foregoing will be included in the form of notice attached hereto as **Exhibit B** and will be served on all creditors.

C.      Abandonment of Property

30.     By this Motion, the Debtor further seeks an order authorizing the Plan Administrator, in exercise of his business judgment, to abandon certain assets (the "Assets"), which are of no or negative net value to the Debtor's estate and the continued maintenance of which constitutes a burden to the estates.  The Assets are listed on the attachment to **Exhibit B** hereto and include, among other assets, primarily unsecured loans and claims, uncollectible judgments (including a judgment against the Debtor's former president), and other assets appearing on the Debtor's books and records.  As indicated on the attachment to **Exhibit B**, some of the Assets, while ostensibly carried on the Debtor's books and records, include claims that have been released by agreement or discharged in connection with insolvency proceedings

brought by the borrowers. All of the Assets are of apparently limited or no value. The Debtor has marketed the Assets, individually and collectively, for years without obtaining a buyer. Most recently, the Debtor concluded negotiations with a typical purchaser of debtor "remnant" assets that was ultimately unwilling to conclude a transaction with the Debtor with respect to the Assets.

31. The form of notice appended hereto as **Exhibit B** is calculated to give notice to all the Debtor's creditors of the intent to abandon the Assets and elicit, if possible, any interest whatsoever in the purchase of any or all of the Assets, absent which the Assets should be abandoned.

32. Abandonment of the Assets is governed by sections 554(a) and 363 of the Bankruptcy Code. Section 554(a) provides, in relevant part, as follows:

> After notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.

11 U.S.C. §554(a). Section 363(b)(1) provides, in relevant part, as follows:

> The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . . .

11 U.S.C. § 363(b)(1).

33. The abandonment of the Assets also is governed by Rule 6007 of the Bankruptcy Rules, which reads, in pertinent part, as follows:

> Unless otherwise directed by the court, the trustee or debtor in possession shall give notice of a proposed abandonment or disposition of property to the United States trustee, all creditors, indenture trustees and committees elected pursuant to § 705 or appointed pursuant to § 1102 of the Code. A party in interest may file and serve an objection within 14 days of the mailing of the notice, or within the time fixed by the court. If a timely objection is made, the court shall set a hearing on notice to the United States trustee and to the other entities as the court may direct.

Fed. R. Bankr. P. 6007.

34. Courts have held that "[t]he trustee's power to abandon property is discretionary." *In re Slack*, 290 B.R. 282, 284 (Bankr. D.N.J. 2003) (citations omitted). "Courts defer to the trustee's judgment and place the burden on the party opposing the abandonment to prove a benefit to the estate and an abuse of the trustee's discretion." *Id.* "The party opposing the abandonment must show some likely benefit to the estate, not mere speculation about possible scenarios in which there might be a benefit to the estate." *Id.* "The court only needs to find the trustee made: 1) a business judgment; 2) in good faith; 3) upon some reasonable basis; and 4) within the trustee's scope of authority." *Id.* Generally, a trustee may abandon estate assets that are of "inconsequential value and benefit to the estate" or that are "burdensome to the estate." *In re Reich*, 54 B.R. 995, 1004 (Bankr. E.D. Mich. 1985). The decision to abandon must merely reflect "business judgment made in good faith" that rests on a reasonable basis. *In re Cult Awareness Network, Inc.*, 205 B.R. 575, 579 (Bankr. N.D. Ill. 1997).

35. All of the conditions to abandonment are satisfied here. After reviewing the Assets, the value of each of the implicated assets, the costs associated with maintaining them, and the potential for sale, the Plan Administrator has concluded in his business judgment that the Assets are of no net benefit—and further administration of the Assets may give rise to a net burden—to the Debtor's estate and should be abandoned. Upon abandonment, ownership shall revert to those with ownership interests, if any, and taxing and other local authorities with interests in the Assets, if any, will be permitted to proceed with tax sales or other dispositions of the Assets.

36. Among other things, Bankruptcy Rule 6007(a) requires that the Debtor give notice" of its intent to abandon the Assets, "[u]nless otherwise directed by the court" on "all creditors." Fed. R. Bank. Pro. 6007(a). The Debtor submits that the form of notice appended

hereto as **Exhibit B**, which will be served on all creditors, satisfies Rule 6007(a) of the Bankruptcy Rule and seeks approval of such notice as satisfying Rule 6007(a).

### D.  Abandonment and Destruction of Certain Books and Records

37. By this Motion, the Debtor seeks entry of an order authorizing, but not directing, the Debtor's abandonment, disposal, and/or destruction of certain non-essential books, records, electronic storage devices, and other papers of the Debtor (the "Books and Records"). The Books and Records are not necessary to the discharge of the Plan Administrator's duties or to the continued administration of the estate. As a result of the proximate closing of the Chapter 11 Case, the Trustee no longer needs to retain all of the books and records of the Debtor. Moreover, the continued maintenance of the Books and Records constitutes a burden to the estate.

38. The Books and Records include approximately 118 boxes of the Debtor's records and two hard drives containing electronic records, including loan and original asset real estate files, miscellaneous corporate records and stockholder files, and other miscellaneous documents. The cost of the destruction of all of the Books and Records will be approximately $1,800.00.

39. Section 554 of the Bankruptcy Code provides, in relevant part, that "[a]fter notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(a). In addition, section 363(b)(1) provides, in pertinent part:

> The trustee, after notice and a hearing, the trustee may use, sell, or lease, other than in the ordinary course of business, property of the estate.

11 U.S.C. § 363(b)(1).

40. Moreover, the abandonment, destruction or other disposal of the Documents is also governed by Bankruptcy Rule 6007, which reads, in pertinent part, as follows:

> Unless otherwise directed by the court, the trustee or debtor in possession shall give notice of a proposed abandonment or disposition of property to the United States trustee, all creditors, indenture trustees and committees elected pursuant to § 705 or appointed pursuant to § 1102 of the Code. A party in interest may file and serve an objection within 15 days of the mailing of the notice, or within the time fixed by the court. If a timely objection is made, the court shall set a hearing on notice to the United States trustee and to the other entities as the court may direct.

Fed.R. Bankr. P. 6007.

41. Section 554(a) of the Bankruptcy Code "serves the purpose of expeditious and equitable distribution by permitting the trustee to abandon property that consumes the resources and drains the income of the estate." *In re Pilz Compact Disc, Inc.*, 229 B.R. 630, 635 (Bankr. E.D.Pa. 1999) (citation omitted). The Court need not consider "speculative factors" when making a determination pursuant to section 554.

42. The Plan Administrator does not reasonably anticipate any prejudice befalling any party in interest in the event the Books and Records are discarded or destroyed, especially insofar as all contested matters, adversary proceedings, and claims objections have been completed and insofar as this Motion seeks closing of the Chapter 11 Case.

43. With respect to Rule 6007, the Confirmation Order limits service of pleadings after the Effective Date to certain key parties, as follows:

> (a) The Debtor and its counsel, (b) the Plan Administrator and its counsel; (c) Wells Fargo Bank in its capacity as Indenture Trustee for Series 3 Note Holders; (d) Law Debenture Company in its capacity as Indenture Trustee for Series 4 Note Holders; (e) the United States Trustee; and (f) any party known to be directly affected by the relief sought.

Confirmation Order ¶ 9. Moreover, Rule 2002-1(h) of the Local Bankruptcy Rules of the United States Bankruptcy Court for the District of Maryland limits notice in a Chapter 11 cases such as this one in the case of the "proposed use, sale or lease of property of the estate other than in the ordinary course of business" to a subset of parties in interest that does not include "all creditors." The Debtor submits that the Local Rule does not require service of this Motion upon "all creditors." To the extent that the Court finds that the Local Rule does not so limit Rule 6007(a), and that the limitation of service provided for the Confirmation Order does not control, Rule 6007(a) permits the Court to "otherwise direct." The Debtor will serve a copy of this Motion and related documents on the parties in interest set forth in the Confirmation Oder and, therefore, requests, to the extent required, a limited waiver of the service requirement set forth in Rule 6007 with respect to the abandonment and destruction of the Books and Records. The Debtor submits that the requested waiver is appropriate and will properly and timely effectuate notice to the real parties in interest.

*[remainder of page intentionally left blank]*

WHEREFORE, the Debtor, having fully administered the Debtor's estate, respectfully requests entry of an order, substantially in the form appended hereto, (a) entering a Final Decree, (b) approving distribution to unsecured creditors, (c) approving abandonment of the Assets, (d) approving the abandonment and destruction of the Books and Records, and (e) granting certain related relief, including but not limited to approval of the form of notice attached hereto as **Exhibit B**, which provides notice to all creditors of the proposed distribution and the proposed abandonment of the Assets.

Dated: July 15, 2022

PACHULSKI STANG ZIEHL & JONES LLP
Bradford J. Sandler (Bar No. 4142)
Michael R. Seidl (Bar No. 3889)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone:  (302) 652-4100
Facsimile:  (302) 652-4400
E-mail:   bsandler@pszjlaw.com
              mseidl@pszjlaw.com

and

BARNES & THORNBURG LLP


_/s/ James E. Van Horn_
James E. Van Horn (Bar No. 29210)
Barnes & Thornburg LLP
1717 Pennsylvania Avenue, N.W.
Suite 500
Washington, D.C. 20006-4623
Telephone: 202-371-6351
Facsimile: 202-289-1330
E-mail: jvanhorn@btlaw.com

Counsel to the Post-Confirmation Debtor